José Ramírez-Muñoz, Plaintiff and Appellee, *v.* Jacinto Muñoz et al., Defendants and Appellants.

.No. 4069.   Argued January 27, 1927.—Decided April 18, 1928.

*A. L. López* for appellant Moreno.   *González Fagundo & González Jr.* for appellants J. Muñoz and J. Muñoz & Co.   *Rafael Arce Rollet* for the appellee.

Mr. Justice Aldrey delivered the opinion of the court.

José Ramírez Muñoz, the owner of a masonry building on Gautier Benítez and Vizcarrondo streets, Caguas, leased the building in 1919 to Jacinto Muñoz at $70 monthly for the period of two years ending October 31, 1921, the lessee binding himself to preserve it in good condition. Prior to June 1, 1921, Jacinto Muñoz had subleased a part of the property, to the firm of J. Muñoz & Co., composed of Jacinto Muñoz, Pedro Solá Colón and Francisco Ortiz, to be used as a grocery store, another part to Joaquín Moreno for a tobacco warehouse and the remainder to Luis Méndez. Some months before the expiration of the lease, or on the night of June 4, 1921, between 12 and 12:30, a fire broke out in the building and damaged it by burning some of its doors, a part of the roof supports, the interior wooden partitions, the pargeting of the walls and other parts. As a consequence of the fire and the insurance against fire on the merchandise of J. Muñoz & Co. in the sum of $6,000 and a similar insurance of Joaquín Moreno for $3,000 the salvaged goods were sold and the defendants vacated the building. No mention is made of the

other sublessee for the reason to be given later. Things remained in that condition and some time thereafter José Ramírez Muñoz, the owner, sued his lessee and the sublessees. The court rendered judgment dismissing the complaint and that judgment was reversed by this court and the case was remanded to the trial court for further proceedings. *Ramírez* v. *Muñoz et al.*, 33 P.R.R. 350.

At this stage the plaintiff filed an amended complaint against Jacinto Muñoz, against the firm of J. Muñoz & Co., composed of the three partners mentioned, against Joaquín Moreno and against Luis Méndez, setting up two causes of action, one to recover from Jacinto Muñoz the rent of the building from June 1, 1921, on the ground that he had not delivered the property and continued in possession of it. The second cause of action was against Jacinto Muñoz and the other defendants for the return of the building in the good condition in which they had received it or, if not, that they pay to him $3,500 as the cost of its repair, each defendant to pay his respective share as determined by the court, and that Jacinto Muñoz pay to him also the rent during all the time necessary for the repairs.

Defendant Luis Méndez was dead when that amended complaint was filed and the plaintiff withdrew the action as to him. The other defendants opposed the complaint and after trial of the case judgment was entered against Jacinto Muñoz on the first cause of action for the amount of the rent of $70 monthly from June 1, 1921, until the plaintiff should be given possession of the property or until the payment of the cost of its repair, and against Jacinto Muñoz, J. Muñoz & Co. and Joaquín Moreno ordering them to return the property in the same condition in which it was received by Jacinto Muñoz in 1919 or in default thereof that the firm of J. Muñoz & Co. and Joaquín Moreno pay respectively to the plaintiff the $1,000 and $500 required to repair the house for its proper use; and further that Jacinto Muñoz pay the rent of said house during the time required for the repairs, not

to exceed two months. The complaint was dismissed as against Luis Méndez and the costs were imposed on J. Muñoz & Co. and Joaquín Moreno.

That judgment was appealed from in behalf of Joaquín Moreno by one attorney and of J. Muñoz and J. Muñoz & Co. by another attorney, each party appellant assigning grounds of error against the judgment, a common error assigned by both parties being that the evidence did not justify the judgment ordering payment for the. repairs to the house. We shall consider this assignment forthwith because, if true, it will dispose of the case definitely and make it unnecessary to consider the other assignments of error.

The evidence for the plaintiff consisted of the testimony of six witnesses, two of whom testified to the damages suffered by the house on account of the fire and to the cost of its repair, the other four being plaintiff José Ramírez Muñoz, Juan R. Lugo, corporal of police, Francisco Ortiz and Joaquín Moreno, the last two defendants.

The plaintiff testified that he was informed of the fire in the house on the following day, this being the essential part of his testimony regarding the fire. The corporal of police testified that he went to the house on hearing the fire alarm and saw the firemen when they broke down a door in order to get the hose in and put out the fire; that after the fire was extinguished he went into the house to investigate; that he saw burnt tobacco and groceries and smelt kerosene and discovered that there was a shop in which kerosene was sold, finding whole cans of kerosene unopened and unburnt; that he found out that the fire started within the house, and as there was nothing to show that the fire had been intentional, he thought that it had been caused by the electric installation or a similar agency; that in Caguas other fires had been caused by electric wires, mentioning one which had taken place during the night and another during the afternoon; that the house was closed; that while he was near the fire the tenants Joaquín Moreno and Pedro Solá arrived; that

in the morning of the day following the fire he returned to the house and noticed that there were kerosene cans in boxes which had not been burnt; that the partitions as well as the ceiling had been burnt; that when he got into the house the groceries and the boards were burning; that the flames came from above; that at that time several fires had taken place in Caguas, before and after, and for that reason he had detailed a policeman to keep watch in Gautier Benítez street, and there was moreover a watchman paid by the merchants and assigned to the same duty. Witness Francisco Ortiz, a partner in the business, was sick on the night of the fire and testified that nobody stayed in the shop at night; that he did not know how the fire started; that it was a grocery business, and that the merchants had the services of a paid watchman. Joaquín Moreno said that he stored tobacco in that house, a part of which had been bought that year and was insured at $3,000 and another part not insured grown on his lands and stored in the house a few days before the fire; that some of the tobacco was not burnt and was sold, the insurance company paying him $2,700; that he lived in another house; that he went to the scene of the fire with other people; that he did not know how the fire started, although he made an investigation about its cause, which might have been the electric wires because many fires in Caguas have been caused in that way; that he used to go to that warehouse for a while every day and had put Marcelino Rivera in charge of it; that at night there was on duty a watchman paid by the merchants; that in the part of that house occupied by him there was an electric installation, and that no work was done there at night.

That was the evidence produced by the plaintiff, together with an ocular inspection of the premises whose result does not appear from the record.

The evidence of the defendants consisted of the testimony of several witnesses. One of them, Pedro Solá, a partner of J. Muñoz & Co., said that the grocery was open until six

in the afternoon on work days and on Saturdays they closed at ten in the evening and then left for their homes after searching it thoroughly and locking it; that there was a night watchman paid by the merchants whose duty it was to keep watch in the street of the merchants who paid him; that that night the shop had been locked and inspected and while sleeping in his house he was informed of the fire, he leaving at once and going to the fire station, helping to take the fire engine to the place of the fire; that at that time they had seven thousand and odd dollars in stock without including a cash register for which they paid $1,000, an adding machine worth $275, a safe worth about $70, a desk worth $150 and the shop windows worth between $600 and $700, which fixtures were not insured; that when the fire occurred all the house was locked; that in his opinion the fire was caused by the electric wires because they have been the cause of other fires in Caguas and he had seen a pole of the electric light being burnt and fall down; that kerosene was sold in his business and they had in stock twenty-five boxes which the insurance company sold, some of them being broken because the firemen entered and destroyed a lot of provisions; that the kerosene was not set on fire because the fire did not reach the place where it was; that it was spilt about there and there were broken boxes and cans which were opened in the confusion and were emptied on the floor; that the insurance company paid seven thousand and odd dollars (he mentioned other fires caused in Caguas by the electric wires); that before the fire they had also there a gasoline stand with a fireproof tank and on seeing it the owner of the house told him that unless they insured the house they had to suppress that business, which they did; that after the fire the whole building was vacated immediately, or on June 4, 1921, and he took a check to José Ramírez for the amount of the rent, less four days of June; that after that he has not been asked to pay the rent; that it was he who paid the rent for the whole building and this was known to Ramírez who used to send

his son to collect from him; that the shop was lighted by electricity and that night as usual the current was off; that the insurance company paid them nearly $6,000 which was used to pay debts and he had besides to sell a house belonging to him which cost him $3,000 and his partner had to pay $2,000 more because the value of the stock was not covered by the insurance policies; that when the price of sugar went up in 1920 he made a lot of money and when it fell he did not lose anything because he stopped buying when sugar was selling at eight or ten dollars and that at the time of the fire their sales were between seven and eight thousand dollars a month. Marcelino Rivera testified that he was the manager of a business in partnership with Joaquín Moreno for the purchase of tobacco; that he used to close at six in the afternoon the warehouse where nobody lived; that it was lighted by electricity; that before going to bed he used to go to the warehouse and push the doors to ascertain whether they were locked; that on the night of the fire there was in the warehouse the tobacco he had bought and another amount which had arrived two or three days previously from the plantation of Moreno.

Finally there was presented in evidence the report of the investigation made of that fire by the prosecuting attorney, which added nothing new to the existing evidence.

The evidence at this trial was not conflicting, for that of the plaintiff was to show the fact of the fire and the damages caused, and that of the defendants does not deny those facts and its only purpose is to show that the damages suffered by the leased house had not been caused by their fault.

According to section 1466 of the Civil Code the lessee is liable for the deterioration or loss suffered by the thing leased, unless he proves that it took place without his fault; and in our former judgment in the present case we held that section 1454 imposes also that liability on the subtenants.

A summary of the evidence of the defendants as a whole shows that they acted as prudent men in the use of the parts

of the house which they had respectively subleased, for they locked the doors of the house each night after making an inspection, they paid their share of the wages of the night watchman employed by the merchants for watching each night their business premises, which was also done by a policeman. They showed that the part of the house occupied by them had electric light; that there had been other fire outbreaks in Caguas caused by electric wires; that J. Muñoz & Co. had removed a gasoline stand which they had installed as ordered by the owner if they failed to insure the house against fire, and though they kept in the grocery business some boxes of kerosene cans, the sale of that article was part of their grocery business. In view of that evidence, which has not been contradicted, we are of the opinion that the defendants showed that the fire which caused the damages to the house occurred without their fault and therefore the defendants are not liable for the repairs to the house.

In view of the foregoing conclusion it remains for us to consider whether lessee Jacinto Muñoz is bound to pay the rent of that house from June 1, 1921.

After the fire the house was unserviceable for the purpose for which it was used. Since then the lessee and the sublessees have not had either its use or its possession and what has happened is that its owner has not cared to take material possession of it because in his opinion the house should be returned to him in the same condition in which he delivered it, and we have held that neither the lessee nor the sublessees are bound to do so because the fire took place without their fault. According to subdivision 2 of section 1457 of the Civil Code the lessor is bound to make on the property during its lease all necessary repairs in order to preserve it in condition to serve for the purpose to which it was intended and as he has failed to make such repairs he is not entitled to the rent from the time the house became unserviceable.

For the foregoing reasons the judgment appealed from must be reversed and the complaint dismissed, without special imposition of costs.

Mr. Justice Hutchison concurred in the result.

Mr. Justice Texidor took no part in the decision of this case.